The final case to be argued this morning is Anilao v. Spota. We'll hear that now. Yes, good morning. May I please the court, Oscar Michelin on behalf of appellant Felix Van Leeuwen. I'll share our argument time with my co-counsel Paula Fromm, who will argue on behalf of what we call the nurse appellants. What the court is faced with here is the protection by the district court through the application of egregious uses of a public office that I would argue this court has ever seen. Prior to our clients being investigated, convicted, and attempted to be punished by the Suffolk County D.A., Suffolk County D.A. already knew that the applicable agency in charge of investigating the nurse's conduct, the Department of Education, had found that the nurses committed not only no crime, but no professional misconduct and no moral misconduct. The Suffolk County D.A. had already known. How do you get around absolute immunity with respect to the actions of presenting to the grand jury, which is, I think, the bulk of the allegations regarding wrongful conduct? We argue that the investigation itself, which is qualified immunity, was also wrongful, but we also argue that this presents the rare exception to absolute immunity because the Suffolk County D.A. had no jurisdiction, and they had no jurisdiction because the Second Department correctly decided that this prosecution was unconstitutional ab initio in granting the rare writ of prohibition. The Second Department said that there was never a crime. They didn't even need to read the grand jury minutes. They read the indictment. They saw the documentary evidence. They heard what the nurses were accused of doing, which is quitting their job, and worse, that the Suffolk County D.A. then went and investigated and indicted an attorney for giving legal advice. So with respect to our client, Felix Van Leeuwen, there was never any opportunity to say he committed a crime. What happens if we agree with that? Does the qualified immunity still apply, or what's your argument? In other words, if absolute immunity is lost because there was no jurisdiction to bring this prosecution, what happens? Yes, I would say that there's no need to reach the qualified immunity argument because everything they did was unconstitutional. No, that's my question. Do we need to reach qualified immunity? You're saying no. Not if the court finds that the D.A.'s office had no jurisdiction ab initio, as we argued, then absolute immunity would not apply. And so, yes, you would not have to reach that qualified immunity issue. I'm not sure what you mean by ab initio. It's one thing to bring a prosecution. It's another thing to investigate. In other words, it probably was the authority to investigate. The writ of prohibition, the decision, I think, applies to the prosecution, the actual bringing of an indictment. Well, then the court would look at, as far as the investigation phase under qualified immunity, if that's the position the court takes. What we're arguing, however, is that quickly, almost immediately, at the start of the investigation, the D.A. knew or should have known, through any reasonable application of the law, that there was no basis to even investigate the clients. The investigation had already been done by the Department of Education, by the State Department of Health, and even by the Suffolk County Police Department, all of whom decided not to act. And more importantly, the Department of without any moral misconduct. And as a matter of fact, the record shows that D.A. Spoda testified that he wanted to wait until the Department of Education ruled before he began even the full investigation. So I'll yield the balance of the argument to Ms. Fromm, who will address the other issues in our brief. Thank you. Good morning, Your Honors. My name is Paula Schwartz Fromm, and I represent the remaining nurse defendants. We argue that the County of Suffolk should be responsible for the actions of Leonard Leto, acting at the behest and with the cooperation of Thomas Spoda, because they constituted official actions of the County of Suffolk, taken by the Chief Law Enforcement Officer. The actions involved a policy formulated by the person in charge of the office to abuse the powers of the office for the benefit of those who are either politically connected or whom the District Attorney, for whatever reason, determined should be by the powers of his office. In this case, the prosecution, which was without basis in law or fact, was undertaken solely to intimidate those who would oppose a politically powerful nursing home chain's abuse of immigrant nurses. As such, it was critical that the attorney and the nurses be indicted. And they were. But the indictment was based upon knowingly perjured testimony, evidence created out of whole cloth, and a charge on the law which had nothing whatsoever to do with the law. And now those things don't matter if absolute immunity applies. Would you agree with that? No, because this is a different issue than absolute immunity. This is the... Well, that's what I'm asking is, if absolute immunity applies, the motivations don't matter. And that's exactly what we held in the Bernard case. I think that I'm arguing for Monell liability, which is based upon the issue that the office as a county entity was abusing its powers. And that when you find that in the Monell context, in the context of the Brooklyn DA's office, which was not giving out rating material, that the question of absolute immunity basically doesn't come into play. This is a completely different issue, the Monell issue. And it's not prosecutorial immunity, it's failure to supervise employees of the office. And you're relying on the policy, that there is a policy because a high-ranking official was involved? A high-ranking official directed it, a high-ranking official used it, and there is more than one instance in which this took place. Indeed, it culminated in the conviction of Mr. Spoda for another instance of the abuse of the powers of the office in basically the same kind of manner, which was to fabricate evidence, suppress evidence, et cetera, for the use of the politically powerful. So I don't think you have to, I think even if you found that absolute immunity applied, you could still find liability under the Monell standard. As to the county? As to the county, yes. And in addition, if you reach qualified immunity, because there is an aspect of this which was non-prosecutorial in terms of the creation out of whole cloth of a good deal of the evidence that was presented to the grand jury, I think the qualified immunity would not apply, that this is not a prosecutorial function. And there is no question that being indicted under evidence that is perjured or made up out of whole cloth would be a violation of the constitutional rights. All right, thank you. You have some time for a vote. I just want to make sure because now I'm a little confused. Are you saying that if we were to disagree with the argument that both of the individuals are not entitled to any form of immunity, there would still be Monell liability? There could still be Monell liability if they were not entitled to any form of immunity, but there also could be Monell liability if they are entitled to immunity. I think they're two separate independent questions. That's not the usual course, but okay. All right, thanks. Thank you. We'll hear from the other side. Who's going first? Mr. Mitchell? Yes, thank you, Your Honor. It's Brian Mitchell. I represent the county of Suffolk, as well as the estate of Leonard Leto. Mr. Leto passed away. The first thing I want to bring up is on the issue of absolute immunity. It's our position that in the plaintiff's opening brief, they raised an argument that absolute immunity, although it applies that this court should make an exception and carve out a new extension for absolute immunity, should not apply. Our position is that that argument was never raised in the court below, and this court should not even entertain it. I don't know that that's a great argument to create a new category or new exception, but I think what does concern me is the second department's decision finds that there was no jurisdiction to prosecute for these crimes. That seems to fit precisely within the definition set forth in Bernard, where if there is no jurisdiction, the absolute immunity is lost. Your Honor, the language that's used by the federal courts is that the immunity won't apply in a situation where there's a clear absence of all jurisdiction. Where's the authority for prosecuting a lawyer for giving legal advice? It's in the New York TPL, Your Honor. I'm looking at the indictment, which is at advisers and nurses to resign because they feel they're being discriminated against. Suddenly, this is a conspiracy in the sixth degree. If he's advising them to commit a crime, this is a bootstrap. The appellate division determined that there was no crime at the time. Therefore, there couldn't be an indictment of Mr. Vindeland because he couldn't advise them to commit a crime. However, the flip side of that obviously is if there is a basis to present the case to the grand jury, which there is. The CPL permits the DA to present cases to the grand jury. What do we do with the second department's decision? The second department's decision rested the issue of whether there can, from that point forward, whether a prosecution could lie. The second department made a factual determination, which I thought was unusual, and said in that specific instance, in this specific case, they determined that there would be a writ of prohibition because they found that actually a prosecution couldn't lie. That's different than whether the DA is acting in the clear absence of jurisdiction. The second department even said that in certain exceptional cases, there could have been a crime here. Factually, they said, essentially, because after the nurses had resigned, the nursing home was able to get coverage, that it didn't endanger the children. So what they're saying is that had the children perhaps been in even a more dire situation... The second department says that a writ of prohibition lies to prevent an officer from proceeding without jurisdiction or in excess of jurisdiction. Then it goes ahead and grants the writ, which shows that it found that the officers here were acting without jurisdiction or in excess of jurisdiction. Why is that not at least a plausible claim? Because the absolute immunity is lost. Because the standard is not in excess of jurisdiction. The standard is you act in the clear absence of jurisdiction. That's an important distinction, Your Honour. The appellate division said they went in excess of their jurisdiction. There are times when what was presented to the grand jury, the type of crime endangering the And so the appellate division is simply saying excess of jurisdiction. That's different than clear absence of all jurisdiction, which is the only opportunity where absolute immunity would not apply. And permit me, Your Honour, I just wanted to address two other points while I still have some time. On the argument, the actual argument of whether there was a constitutional violation committed by Mr. Leto during the quote-unquote investigative stage of the prosecution. We also submit that the plaintiff can't present an argument this time to the court because they have not even raised that in their opening brief. They went directly to qualified immunity and said that Judge Bianco erred in granting qualified immunity. Judge Bianco didn't reach qualified immunity. He simply said that there was no underlying violation. Second, I would just want to address with the court the Monell issue. And it's our position that, one, there was no underlying violation, so there can be no Monell. More importantly, Mr. Leto. Your adversary disputes that. He says that even without an underlying violation there can be Monell liability. That's an incorrect statement of the law by my adversary. You must have an underlying violation in order to have a Monell claim. My point is, even if there is an underlying violation, there's no Monell claim because Mr. Spoda and Mr. Leto, Mr. Leto mostly, were acting as state actors. In this instance, if you look at the Fires v. Hennessey, which still is good law, this court in Bellamy v. City of New York limited that but basically said immunity will still apply and a prosecutor, rather, will be acting as a state actor if he's involved in the decision when and how to prosecute. And that's exactly what Judge Bianco said. He said that even if there was an underlying violation, the Monell claim wouldn't lie against the county because they're state actors. And he specifically pointed out and cited Bellamy that this was conduct that hinges upon the decision to prosecute. Other than that, under any other theory of Monell, even if Mr. Leto was a state actor, excuse me, a county actor, there's no evidence that would satisfy the other theories of Monell. There's no evidence of a widespread practice of mismanagement. There's no evidence of any type of persistent acts on the part of any of the defendants. That would lead to a Monell under a different theory. The plaintiffs cite nothing but Newsday versus the county of Suffolk, which was dismissed on summary judgment and that was affirmed by this court. So the evidence that the plaintiffs put forward to say that there's some sort of policy, there is nothing. It's either hearsay or it doesn't exist. And it's nothing more than speculation. With respect to the grand jury issue, the prosecution, are you also making a claim of qualified immunity or is it entirely absolute immunity? No, your honor, if there's a determination that there's no absolute immunity applied to presenting a case to the grand jury, which we would think would be an extreme decision, then of course my argument would be qualified immunity does apply. Because if you look at the standard for qualified immunity, you've got two things. Either that the person acted in a manner that was objectively unreasonable, or that the law was clearly established. We submit that Mr. Lato's conduct in this case was not objectively unreasonable, especially in light of... Well, I would think that the argument is that, as I understand it, but someone can correct me if I've got this completely wrong, the appellate division decision comes out after all of this occurs. That's right, Judge. That's just my secondary argument. That goes to the concept of whether the law was clearly established, that under the specific facts of this case, that what Mr. Lato did would be considered a constitutional violation. And in the wake of the indictment... A constitutional violation because he acted without jurisdiction, according to the appellate division. According to the appellate division, but we've got a decision from a Suffolk County County or Supreme Court judge who reviews the grand jury minutes, who knows the facts, who's presented with that exact argument and says, no, that the indictment is sufficient, the charge was valid, and the prosecutor acted within his scope. And then the appellate division says, we disagree with the lower court, and says there was no jurisdiction. The point is, you've got a judge in the county of the Supreme Court... Doesn't the appellate division carry more weight than a Supreme Court judge? So, Your Honor, it's not an issue of precedential weight. My point is, the law is not clearly established if you have two judges, two bodies, who their very act is to interpret the law. And you've got a judge of the Supreme Court says, what was done was correct. We've got the appellate division saying, no, it was not. That argument goes to whether Mr. Lato, at the time he committed his conduct, whether the law was clearly established that what he was doing would be All right. Thank you. We'll hear from your colleague, Mr. O'Brien. Good morning, Your Honors. If it pleases the court, it's a pleasure and honor to be before this court. My name is Steve O'Brien and I represent Thomas J. Spoda individually. On behalf of Mr. Spoda, I join in the arguments of my co-counsel, Mr. Mitchell. I do want to add that I am representing Mr. Spoda in his individual capacity only and that even if he is not immune from suit, Mr. Spoda can be held liable in his individual capacity only for acts in which he was personally involved. Plaintiff's factual assertions all concern the acts of A.D.A. Lato, not the specific acts of Mr. Spoda. Now, it seems to me that the court is zeroing in on the arguments being made by the appellants concerning the writ of prohibition issued by the Appellate Division, Second Department. And I heard, I believe it was Justice Lawyer. You just promoted me, but I thank you. All right. Judge Levier, yes. I believe you said that the finding by the Appellate Division was that it was in excess of jurisdiction. And I believe that it's quoted in the court that it's in excess of power. And those two things are very, very different. Well, I actually asked the question, but at one part of the opinion, the Second Department writes that the writ of prohibition can apply if an officer acts without or in excess of jurisdiction. So it's two different prompts. And then it goes ahead and grants the writ. Now, it's possible that it's just in excess, but, you know, we'd have to read the opinion more carefully to see whether indeed the Second Department was finding that it was without jurisdiction. So what is the effect of the decision? Are we bound by the Second Department decision? Can we ignore it? What I would say to you, Judge Chin, is that I believe that the Second Circuit has addressed similar issues. And that would be in the Barr v. Abrams case, which is cited in my brief, and it's also cited by Justice Bianco. And there's a list of cases. In fact, I cite five cases in my brief from various jurisdictions that address the theory that absolute immunity does not bar a suit for damages for performance of advocacy functions when a prosecutor initiates a prosecution in violation of plaintiff's constitutional rights has been considered and rejected by this court and other courts as well. I cite those cases. So does Justice Bianco in the lower court decision. That's at the special appendix between pages 23 and 26. And the appellant never acknowledged those cases. They don't address those cases. They mentioned one in their reply brief that we, meaning the county and Mr. Spoda, give short shrift to the writ of prohibition. In fact, I wrote two or three pages concerning that, citing five or six cases that deal with this very issue. And I believe the Second Department has already issued decisions similar to this. But getting back to your comment, Judge Chin, I believe that the decision by the Appellate Division, Second Department, actually uses the words in excess of power. I've actually quoted it in my notes. I don't have the decision right in front of me. But for oral argument, I actually am quoting the Appellate Division. So it's a big difference. Obviously, if a prosecutor acts without jurisdiction, it's different than if he acts in excess of jurisdiction. In this case, I would say the Appellate Division has said it was in excess of power, not without jurisdiction. I did also want to address, and I don't see it, I don't have a timer on my... Oh, the red light has just gone on. But go ahead and take a moment to... Thank you, Your Honor. I just wanted to mention that in the reply brief of the remedy, and what I would suggest to the court that in this case, they've had remedies. One of the remedies they had was they've had a monetary settlement with the private entities that were involved in this case. They also had a remedy against the District Attorney's Office. But as Judge Bianco found, they weren't able to provide sufficient facts in order to gain that remedy. And then in a non-monetary way, they also obtained relief through the writ of prohibition with the Appellate Division by them not being prosecuted. So I would leave you with that. And if there's any other questions, I'm free to answer those questions. Thank you. We'll hear the rebuttal. Your Honor, in regard to the Second Department decision, I think that the found that the District Attorney acted without jurisdiction. The fact that the court said basically a dictum, that if there were different facts, a prosecution could be sustained in this instance, doesn't have anything to do with the fact that there weren't different facts here. My question is that, set aside for a moment, the Appellate Division decision, what we have required in order to trigger this exception that you're trying to rightly take advantage of in the context of absolute immunity is that the prosecution was not clearly beyond the prosecutor's jurisdiction, either as a matter of absolute immunity and, as I indicated in some earlier questions, perhaps also in the context of qualified immunity. And given the fact that, you know, just, Aang, in the Appellate Division decision, that's a long decision, well thought out, but given the fact that it comes afterwards and it's analyzing the situation, how can we say that this was clearly, at the time, beyond the prosecutor's jurisdiction? This may go back to my qualified immunity question. Your Honor, it's always afterwards that a court rules on whether there's jurisdiction or not, because it would never be before the court until the prosecutor acted in excess of jurisdiction. But I think if you look at it objectively, if you look at the facts as they presented themselves to the prosecutor at the time, which was that the agency responsible for supervising the nurses had already found that their conduct did not violate the statute that they were indicted under, and that the attorney who was indicted was simply giving unexceptional legal advice to a client, I think that if the Appellate Division had been asked and could have ruled prior to them undertaking this prosecution, the Appellate Division— Let me provide you with a slightly different analytical framework by way of a question. Shouldn't we really look not at the Appellate Division post hoc decision, but at how clear the law was with respect to jurisdiction prior to what happened here, prior to the prosecution? I believe that the law was crystal clear at the time of prosecution. What would I turn to assess your answer to that? The 13th and First Amendment of the United States Constitution, as well as the regulations by the Department of Education regarding the ethical duty of nurses to their patients. I don't know what you could look at that would make the giving of unexceptional advice by an attorney to a client regarding contracts would create a crime out of that. I can't even imagine it. But in terms of the clear laws of whether the nurses violated any duty that they had to their patients, it was absolutely crystal clear at the time of this grand jury presentation that they had not. And in fact, the Department of Education had so ruled. The absolute immunity issue arises in the context of a 12B6 motion, right? So, we're applying plausibility standard. Is that right? Yes. Okay. Thanks to all counsel. The court will reserve to say.